BARFIELD, Judge.
This case comes to the court because federal tax law changed in 1987, resulting in contributions made to utilities in aid of construction (CIAC) being considered ordinary income instead of contributions of capital. The resulting tax became quite a burden to some smaller utilities. When utilities extracted from developers a sum of money sufficient to pay the tax, that sum also was treated as income subject to tax. The process of extracting a sum sufficient to meet the full tax obligation is known as “grossing-up.”
The appellant, Southwest Florida Capital Corporation (SFCC), appeals a final administrative order entered by the Florida Public Service Commission (PSC). The order allowed Gulf Utility Company (Gulf) to continue “full gross-up” of contributions made to the utility in aid of construction. SFCC argues that the PSC authorized Gulf to collect more gross-up from the contributor than is necessary to cover the net tax effect of the CIAC, and in doing so has wrongfully taken the contributor’s property and has imposed an illegal “tax” upon the contributor. SFCC also argues that the PSC acted arbitrarily in permitting Gulf to return the depreciation benefits to the general body of ratepayers and that the finding that contributors pass the full gross-up through to their customers is not supported by competent, substantial evidence. We affirm.
“Contributions-in-aid-of-construction,” as defined in section 367.021(3), Florida Statutes, means:
any amount or item of money, services, or property received by a utility, from any person or governmental authority, any portion of which is provided at no cost to the utility, which represents a donation or contribution to the capital of the utility, and which is used to offset the acquisition, improvement, or construction costs of the utility property, facilities, or equipment used to provide utility services.
As developers and individuals build in undeveloped areas, utility and water companies may require the developer or individual to pay for the extensions or contribute the ex *84 tensions necessary to provide service to those new customers.
Prior to 1987, the amounts of property and cash contributed were not taxable to the utility under certain conditions, but were instead considered contributions of capital. Effective January 1,1987, amounts contributed were taxable to the utility as gross income and depreciable by the utility for federal tax purposes pursuant to section 118(b) of the Internal Revenue Code. A question arose over who should pay for the tax consequences of the treatment of contributions as income to the utility. Florida Waterworks Association (FWW) filed a petition asking the PSC to allow water and sewer utilities to “gross-up” CIAC. This permits a utility to collect sufficient cash from its contributors, in addition to their CIAC donations, to cover the income tax that the utility would pay because of the contributions. On December 18, 1986, the PSC issued Proposed Agency Action Order No. 16971 on an emergency basis to allow corporate water and sewer utilities to elect whether to “gross-up” CIAC in order to meet the tax impact. The tax impact amount to be collected was determined using a formula set forth in that order.
On May 22,1989, the PSC issued Proposed Agency Action Order No. 21266 in which it found that the inclusion of CIAC in a utility’s gross income may have a severe impact on a utility’s tax liability during the year of collection which, if the utility does not also collect the taxes on the CIAC, may result in a cash flow problem. The cash flow problem may result because the full tax liability occurs in the year in which the contribution is received and is recovered over the life of the asset through depreciation. The PSC determined that, as with CIAC, it was reasonable to assume that regardless of the immediate source of the CIAC and the taxes, the costs would ultimately be borne by the home buyer. The PSC stated that in spite of the problems associated with the gross-up, it was appropriate to retain the gross-up as a limited option. It was also determined that it was appropriate to require any utility that wishes to gross-up to file a request for authority to do so, demonstrating the existence of an actual tax liability resulting from the collection of CIAC and that the existing cash flow is inadequate to meet the tax liability resulting from collection of CIAC.
FWW, SFCC, and numerous water and wastewater utilities filed protests and requested a formal hearing on Proposed Agency Action Orders Nos. 21266 and 21436 (which dealt with refunds of contributed taxes). The PSC therefore conducted a hearing where it heard and reviewed extensive evidence on the issue of the feasible regulatory treatment for the tax on CIAC. Based on the evidence received during the hearing, the PSC issued Order No. 23641, in which it determined that utilities could require the developer to contribute the amount needed to cover the tax impact of CIAC.
The PSC noted that other methods of paying the tax on CIAC, such as debt financing or payment by the utility if the utility is in a strong cash position, may be available for some utilities. It was also noted that it would be best for all concerned if the tax could somehow be avoided and the PSC encouraged the industry to continue to search for viable methods of avoiding the tax. However, based on testimony that it would be difficult to obtain debt financing for the tax liability associated with the receipt of CIAC, that investing in taxes can damage the soundness of a utility’s capital structure which would make it more difficult for a utility to obtain needed funds for plant construction, renovation, and major maintenance, and that existing loan agreements often require an assignment or pledge of cash CIAC to service debt, the PSC found that the gross-up should be retained.
The PSC provided, in this “generic” order, that utilities would have to have approval from the PSC to continue to use the full gross-up method of determining tax due on CIAC and set forth various requirements to be met in order to demonstrate the need to use this method. One of the reasons cited for requiring preapproval of the gross-up method is the fact that the method creates a “tax-on-tax” because “[t]he contributed taxes are considered gross income which are, in turn, taxable. Because of this tax-on-tax effect, the gross-up can be as high as 60.3 percent, as compared to a maximum com *85 bined federal and state tax rate of 37.68 percent, if the utility pays the tax on CIAC itself.”
The PSC recognized that there are basically two methods of grossing-up, the full gross-up and the net present value (NPV) gross-up. The PSC noted the distinction between the two methods in Order No. 23541:
The full gross-up allows a utility to collect the full tax impact associated with CIAC, including the “tax-on-tax.” The NPV gross-up allows a utility to collect the taxes associated with the gross-up less the present value of the tax depreciation that will be received in the future. By the very nature of the calculations, the full gross-up will provide more cash flow than the NPV method.
Both methods have advantages and disadvantages. The full gross-up would provide a ready source of cash to pay the maximum tax liability that would be associated with CIAC. However, the full gross-up method fails to take into account future depreciation that will be taken on the contributed assets. The NPV method takes into account the benefit of future tax depreciation, but may not provide enough relief for a utility in a poor cash position.
No appeal was taken from Order No. 23541.
Gulf, a water and wastewater utility in Lee County, filed a request for continuation of full gross-up of CIAC, as required by Order No. 23541. On July 30,1992, the PSC issued Proposed Agency Action Order No. PSC-92-0742-FOF-WS, which authorized Gulf to continue full gross-up of CIAC. SFCC, a developer in Lee County, filed a protest of the order and requested a formal hearing. FWW intervened. The PSC heard extensive testimony and reviewed evidence presented on the issue of whether Gulf should continue use of the full gross-up method. The PSC took administrative notice of Orders Nos. 16971 and 23541.
On August 18, 1993, the PSC issued the final order under appeal, granting Gulf authority to continue its full gross-up of CIAC. Although the PSC agreed with SFCC that Gulf had the burden of proof, it determined that Gulf had provided direct testimony which addressed and met all of the requirements of Order No. 23541. SFCC asserted that Gulf had several alternatives to full gross-up, each of which was addressed by the PSC.
SFCC argued that Gulf should be required to use the NPV method of gross-up rather than full gross-up. The PSC noted that the NPV method is conceptually sound, but determined the evidence in the record was insufficient to determine the viability of this alternative for Gulf. SFCC offered to provide the utility an interest-free loan to finance the cash flow needs of the utility for the tax on CIAC. There was testimony, however, that this method would have resulted in Gulf incurring additional debt of $3,134,000 for the years 1987 through 1992 and that this would weaken and jeopardize the utility’s financial integrity, inhibit its ability to fund its existing debt obligations, and restrict its ability to obtain funds on a reasonable basis for future growth. Additional tax problems associated with an interest-free loan were also noted.
SFCC also suggested that the PSC should require a utility, whenever possible, to service a contributor through a homeowners’ association, if requested by the contributor. SFCC asserted that the lines and certain other contributed property would belong to the association, and would not subject Gulf to income taxation on the property. Testimony indicated that Gulf was concerned that routine maintenance and up-keep of the facilities would suffer. There was concern that if the homeowners decided to get out of the utility business and become customers of Gulf, receipt of the facilities by Gulf at that future point would trigger a tax. The PSC observed:
We do not believe that we can force the utility to form a homeowners’ association. Further, Mr. Freeman testified that SFCC does not need Gulfs help to form a homeowners’ association. Mr. Goldberg also testified that the homeowners, not Gulf, form the association. Further, with regard to a bulk service agreement, Mr. Moore testified that if there is an entity in Gulfs service area that applies for service, Gulf would have to give it service under its *86 tariff. We, therefore, find it appropriate to take no action with regard to this alternative since a homeowners’ association has not yet been formed.
With regard to the proposal of a guaranteed revenue charge on all developers, there was testimony that instituting such a charge would tend to shift the payment burden from a specific developer responsible for generating the tax to all developers and customers. There was also testimony that unless the utility were allowed to vary the amounts charged under the guaranteed revenue contracts, the collection under such contracts could be insufficient to cover the payment of the CIAC taxes, and a mismatch in collections and payments would occur. The PSC found the record insufficient to determine the viability of guaranteed revenue charges for Gulf.
A final proposal was for service to be provided by Lee County Utilities or another utility that does not “gross-up” CIAC. PSC noted that although a utility witness testified that the northern portion of the SFCC project could be served by Lee county Utilities, SFCC did not provide testimony regarding this alternative and it was therefore unable to determine the viability of this alternative.
Competent, substantial evidence supports the determination that Gulf has met the requirements of Order No. 23541 and demonstrated a need to continue to use full gross-up. The PSC considered the alternative methods of payment of the income tax associated with CIAC and the record supports its determination that the viability of the alternative methods for Gulf was not established.
SFCC argues on appeal that by authorizing Gulf to collect full gross-up from developers and later pass depreciation benefits on to all ratepayers, the PSC has wrongfully taken the contributor’s property and imposed an illegal “tax” upon the contributor by authorizing the utility to collect more gross-up than is necessary to cover the net tax effect of the CIAC. SFCC asserts the order is arbitrary and discriminatory because many ratepayers did not donate CIAC, either directly or indirectly, ratepayers who use the most services will benefit most, all contributors do not donate the same amount of CIAC, and ratepayers will purchase their property at different times. SFCC also argues that the finding that contributors pass full gross-up through to their customers is not supported by competent, substantial evidence.
In addressing these assertions, the PSC noted that the issue of who should receive the benefits of tax depreciation of contributed property was addressed in Order No. 23541. The finding was as follows:
Since the practical considerations militate against passing the tax depreciation benefits back to developers and, since we believe that developers generally recover their costs, we find that the tax depreciation benefits should be passed back to the utility ratepayer.
In the present order, the PSC noted that the operative word in the finding above was the word “generally.”
Since the Commission does not regulate or audit the books of the developer, it cannot be determined with any degree of certainty whether developers are recovering their costs or the reason for any losses.... Further, the Commission found in order No. 23541 that although market conditions may determine the selling price of a home, any time a developer has made a profit, it has recovered the costs of CIAC and the related taxes, and that if the costs are passed on to the ultimate ratepayer, the contributor and the ratepayer are one and the same. Based on that premise, we conclude that ultimately, the contributor and the ratepayer are one and the same. Therefore, consistent with the Commission’s finding in Order No. 23541, we find here again that the tax depreciation benefits should be passed back to the utility ratepayer.
Although SFCC presented testimony that the developers are not able to pass this cost on to their purchasers, there was also expert testimony to the contrary.
The Public Service Commission’s findings are amply supported by the record, and we *87 find no error in its final order. AFFIRMED.
KAHN, J., and SHIVERS, Senior Judge, concur.